# RE MOULTON.

PATENTS; PATENTABILITY; CONDENSATION OF STEAM; ANTICIPATION.

A process of condensing steam by passing it in a stream between cooling walls, dividing the stream of steam at frequent intervals by a cooling material, and deflecting the divided stream alternately against the cooling walls and against the cooling material, was anticipated by the Howarth (British) patent of March 4, 1884, which directly carried out the several steps of the process, and is not patentable, but amounts at best to a discovery of the underlying principle of an old device. (Citing *Rosell* v. *Allen,* 16 App. D. C. 559; *Re Creveling,* 25 App. D. C. 530.)

No. 822. Patent Appeals. Submitted January 13, 1913. Decided March 10, 1913.

HEARING on an appeal (before Chief Justice Shepard and Mr. Justice Robb, by stipulation) from a decision of the Commissioner of Patents, rejecting an application for a patent.

*Affirmed.*

*Mr. Luther V. Moulton* for the appellants.

*Mr. William R. Ballard* for the Commissioner of Patents.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents, rejecting an application for a patent having the following claims:

"1. The method of condensing steam, comprising forming the steam into flowing streams, dividing and deflecting said streams at frequent intervals, and exposing the divided streams to cooling surfaces against which said divided streams of steam are deflected.

"2. The method of condensing steam, comprising causing the steam to flow in numerous streams, dividing the streams at frequent intervals, deflecting these divisions in alternate directions, whereby a vibratory movement is set up in the steam, and directing these divided streams against cooling surfaces.

"3. The method of condensing steam comprising forming the same into rapidly flowing and divided streams alternately disposed with corresponding streams of cooling fluid, said steam and fluid being separated by heat transmitting walls; retarding and dividing the streams and deflecting the divided streams of steam against the said walls.

"4. The method of condensing steam comprising passing the same in a stream between cooling walls, dividing the stream of steam at frequent intervals by a cooling material, and deflecting the divided stream of steam alternately against said walls and against said material."

The following patents were cited as references anticipating the invention claimed: Marchant, June 6, 1882; Howarth (British) March 4, 1884; Shiels and Alexander, March 21, 1905; Burdh, June 6, 1905.

It is true, of course, that a process and an apparatus, or mechanism by which it may be performed, may constitute separate and independent inventions. It is also true, as contended by the appellants, that a process is not anticipated by a prior mechanism, by which, with some alterations, it might have been performed. It is not only necessary that the prior patents might have been used to carry out the process, but that such use was either contemplated or would have occurred, in the ordinary mechanical operation of the device. *Carnegie Steel Co.* v. *Cambria Iron Co.* 185 U. S. 403, 422, 423, 46 L. ed. 968, 980, 22 Sup. Ct. Rep. 698; *Re Creveling,* 25 App. D. C. 530, 535.

The Commissioner did not gainsay these principles, but denied their application to the facts disclosed by the application and the references.

The steps of the process claimed are: 1. Dividing the steam

into streams. 2. Subjecting those streams to the action of cooling surfaces. 3. Causing the streams to be deflected against the cooling surfaces. The first two steps he found to be admittedly and notoriously old, and that the gist of the invention consists in causing these divided streams to impinge against the cooling surfaces repeatedly by deflecting them. This he held to be a legitimate step in the process of condensing steam, since it directly co-operates with the other steps mentioned; having for its object the continuous removal of the film of condensed steam from the cooling surfaces, which film, if unremoved, would tend to retard the cooling of the steam. Applicants accomplish this purpose by inserting layers of wire gauze between adjacent cooling surfaces which serve to break up the streams and deflect them against the surfaces. We concur in the following statement of the Commissioner: "In the English patent (Howarth), the same structure is used for dividing the steam into streams, and in figure 6 the use of wire gauze between the adjacent cooling surfaces is illustrated. It would be impossible to use a condenser constructed according to the British patent, with the wire gauze, without performing the process upon which the applicants seek a patent." In their brief applicants point out that the description of figure 6 in the British patent does not disclose the steps of the process of the appealed claims. The description of this figure does state that wire gauze is particularly for use where 'it is found desirable to break up the volume passing between the plates;' but it is not upon this meager description that this rejection is based; it is upon the description of the apparatus as a whole and the purpose for which it is intended, and the fact, which applicants do not deny, that the process of the appealed claims is necessarily involved in the use of the apparatus shown in the British patent. It is true that an apparatus is not an anticipation of a process where it does not suggest the process to those skilled in the art, although the apparatus, with some slight changes, might be used to carry out that process; but where, as in this instance, the use of the apparatus unavoidably results in the performance of the process, the case is different."

This conclusion was that applicants "have merely conceived a new thing of operation, or at best discovered the underlying principle of an old device."

It may be added that figure 7 of the Howarth patent, as well as the structures described in the other references, while differing from the apparatus disclosed by applicants, show that the steam is necessarily divided into numerous streams which are repeatedly deflected against the cooling surfaces.

The chief contention of the applicants is that they discovered the principle of their process, which is the sweeping away of the air set free by the steam and the water of condensation adhering to and creating a film on the cooling surfaces that retards the condensation; and that this principle or purpose is not disclosed in the descriptions of the cited patents. They argue that, aside from "breaking up the volume passing between the plates," Howarth's patent is silent as to "acts performed upon the subject-matter (steam)."

Grant that where Howarth described a device for condensing steam which, by necessarily dividing the steam into streams, and causing them to deflect against the cooling surfaces in their passage, increased the condensing capacity of a given area by removing the film thereon, he was putting in operation a natural law without fully understanding or appreciating the principle or theory of that operation, still he was entitled to all the direct uses of his invention.

*Rosell* v. *Allen*, 16 App. D. C. 559, 566.

The sweeping away of the film is the direct result of the division of the steam into streams, and their deflection against the cooling surfaces whereon the film may have been formed. The several steps of the process—the division of the streams and deflecting them against the cooling surfaces provided to operate upon them—were directly carried out by the Howarth device; and all that the applicants have discovered, as said by the Commissioner, is the underlying principle of that device.

The decision is right and will be affirmed. The clerk will certify this decision to the Commissioner of Patents.

*Affirmed.*